IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 26, 2004 Session

## STATE OF TENNESSEE v. DRAMA SUE DAVIS, Alias

**Direct Appeal from the Criminal Court for Knox County**
**No. 45133      Mary Beth Leibowitz, Judge**

---

**No. E2003-03079-CCA-R3-CD - Filed April 1, 2005**

---

In 1992, the defendant, Drama Sue Davis, alias, pled guilty and was sentenced for DUI, a Class A misdemeanor. Judgment was not entered, and the matter was reset so the defendant would have time to pay the fine and costs. She was to appear at the next setting unless she had paid the fine, costs, and restitution in the interim. Although the costs had been only partially paid, she did not appear at the next setting. A capias was issued, but the defendant was not arrested until ten years later, with the judgment then being entered by the trial court. On appeal, the defendant asserts that, pursuant to Tennessee Code Annotated section 40-6-206, the capias was void after five years, with the trial court thus lacking jurisdiction to impose sentence; and she was denied her right to a speedy trial. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellant, Drama Sue Davis, alias.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patti Crystal, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### PROCEDURAL HISTORY

The defendant was indicted on September 11, 1991, by the Knox County Grand Jury for DUI and reckless driving, offenses alleged to have occurred in February 1991. She waived her right to a jury trial and pled guilty to DUI on June 4, 1992. The trial court sentenced her to eleven months, twenty-nine days, suspended except for forty-eight hours, and ordered her to pay a $250 fine and $700 in restitution to the victim. The trial court also approved the defendant's request to serve her

time in Hamblen County, gave her two hours of jail credit, and reserved entry of the judgment until September 24, 1992.

Because the defendant apparently was in the process of being transferred to Texas by her employer at the time of the guilty plea hearing, the trial court excused her from appearing at the next setting, if she had paid her fine, costs, and restitution. At that setting, on September 24, 1992, defense counsel reported to the court that the defendant was living in Texas because of her job and had paid $258 of the court costs, which totaled $625.50, but was not present in court. He also reported that "[a]s far as [he] kn[e]w," restitution had been paid because the defendant had insurance. However, since counsel was not able to provide verification either that the defendant had actually paid the restitution or served her time in the Hamblen County Jail, the trial court reset the matter until October 23, 1992, for these showings to be made. On that date, defense counsel again appeared in court without the defendant and advised that he had lost contact with her:

> [DEFENSE COUNSEL]: When I last appeared, your Honor had not received a letter from the Sheriff in Hamblen County. I don't believe [the defendant] paid the balance of her fine and costs, had she?
>
> THE COURT: No.
>
> [DEFENSE COUNSEL]: I wrote her a letter and told her that absolutely had to be done by today, and I have not heard from her. I wish I had better news, but –
>
> THE COURT: Well – she's not been in touch with you?
>
> [DEFENSE COUNSEL]: No, your Honor.
>
> THE COURT: All right. Let's take a forfeiture.

That same day, the court issued a capias for the arrest of the defendant and a scire facias notifying the bonding company of the forfeiture. An October 26, 1992, certified letter from the Knox County Criminal Court Clerk's Office, addressed to the defendant at a street address in Morristown, Tennessee, to inform her of the forfeiture and failure to appear, was returned to the court clerk's office as "unclaimed."[1]

The capias was served on the defendant and she was taken into custody ten years later on either October 29 or October 30, 2002, and released on her own recognizance on October 30, 2002. On November 1, 2002, her new counsel made an oral motion, arguing that, at the time of the defendant's new arrest, the 1992 capias was void, pursuant to Tennessee Code Annotated section

---

[1]According to the bill of costs in the record, it appears that on April 30, 1993, the bonding company paid the $500 final forfeiture, of which $398 was applied to outstanding costs and $102 was returned "ToCo," which we assume was the bonding company.

40-6-206, because it was more than five years old. Agreeing with this argument, the trial court entered an order on February 4, 2003, declaring that the capias was "void and of no effect." On June 23, 2003, after another capias was issued for the defendant's arrest, the case was placed in the "[i]nactive file." On July 2, 2003, the trial court set aside this second capias "on payment of costs" and continued the case until August 1, 2003, for entry of judgment.

On July 22, 2003, the defendant filed a motion to dismiss, alleging that she had completed her sentence, that the 1992 capias was void because more than five years had passed since its issuance, and that she had been denied a speedy trial. The trial court denied the motion on October 2, 2003, and entered final judgment on December 11, 2003. The judgment form reflects a guilty plea to DUI and a sentence of eleven months, twenty-nine days, with 362 days to be served on unsupervised probation and two days pretrial jail credit. In addition, the defendant's driver's license was revoked for one year, and she was ordered to complete DUI school and pay a $250 fine and costs. The reckless driving count was dismissed. This appeal followed.

## ANALYSIS

Relying on the trial court's conclusion that the 1992 capias, which had resulted in the defendant's 2002 arrest, had expired five years after its issuance and become void, she argues, pursuant to the holding in State v. Wilson, 6 S.W.3d 504 (Tenn. Crim. App. 1998),[2] that the December 11, 2003, sentence and judgment were invalid. Additionally, she argues that the lapse of time between her 1992 court appearance and her 2003 sentencing violated her right to a speedy trial.

### I. Validity of the Capias

We will review first the argument that the capias issued in 1992, but not served on the defendant until 2002, was void because Tennessee Code Annotated section 40-6-206 provides that certain court papers have only a five-year lifespan:

> Any process, warrant, precept or summons authorized to be issued by any of the judges or clerks of the court, in any criminal prosecution on behalf of the state, may be issued at any time and made returnable to any day of the term. In a misdemeanor case, if such a process, warrant, precept or summons has not been served, returned or quashed within five (5) years from the date of its issuance, such process, warrant, precept or summons shall be automatically terminated and removed from the records.

---

[2] In Wilson, this court held that an arrest warrant, void because its supporting affidavit was signed long after the warrant had been issued, "invalidate[d] all subsequent proceedings emanating from the warrant." 6 S.W.3d at 507 (citing State v. Campbell, 641 S.W.2d 890 (Tenn. 1982)). However, since we have concluded in the present appeal that the 1992 capias was not void after five years, and the trial court erred in so ruling, the Wilson holding is inapplicable.

Tenn. Code Ann. § 40-6-206 (2003).[3]  By the defendant's view, this statute caused the 1992 capias to become void in 1997, and, thus, the trial court did not have jurisdiction to impose sentence on December 11, 2003.

Since this claim presents a question of law, our review is *de novo*, with no presumption of correctness given to the trial court's judgment.  Warren v. American Holding Co., 20 S.W.3d 621, 623 (Tenn. 1999).  Our role is to ascertain and give effect to legislative intent, id.; Schering-Plough Healthcare Products, Inc. v. State Bd. of Equalization, 999 S.W.2d 773, 775 (Tenn. 1999), which is to be ascertained from the natural and ordinary meaning of the language used.  Id.  Further, we construe this statute, to whatever extent possible, so that its component parts are consistent and reasonable, State v. Odom, 928 S.W.2d 18, 30 (Tenn. 1996), and in the light of reason, Voss v. Shelter Mut. Ins. Co., 958 S.W.2d 342, 345 (Tenn. Ct. App. 1997).

The parties disagree as to the application of the sole previous judicial interpretation of Tennessee Code Annotated section 40-6-206.  In that case, State v. Walter Thomas Allen, No. 02C01-9503-CR-00087, 1995 WL 764996, at *1 (Tenn. Crim. App. Dec. 28, 1995), perm. to appeal denied (Tenn. Mar. 25, 1996), the defendant had pled guilty on October 6, 1983, to DUI, second offense, and was sentenced to the county workhouse.  However, upon his request, "execution of the sentence was deferred until November 14, 1983."  Id.  The defendant then "fled the jurisdiction and forfeited his bond."  On November 18, 1983, a capias was issued for him, but he was not arrested until 1994, over ten years later.  He appeared in court on October 19, 1994, "arguing that he should not be required to serve his sentence because he was arrested on a void warrant."  Id.  In light of the intended purpose of Tennessee Code Annotated section 40-6-206, we concluded that the 1983 capias still was valid at the time of the 1994 arrest:

> The statute reads "any . . . warrant . . . in any criminal prosecution."  Criminal prosecution has concluded when an accused is adjudicated guilty and is sentenced.  This appellant has been prosecuted and convicted.  Sentence was imposed.  In the context of  Tenn. Code Ann. § 40-6-206, criminal prosecution does not encompass warrants issued for execution of sentence after a defendant is convicted.

Id.

The defendant argues this holding is not applicable to the present appeal because of their perceived factual differences.  The State disagrees, asserting that both cases present "the very same factual situation," because in both the capias was issued after the defendant had pled guilty and the court had "rendered the sentence" but had not yet "executed the judgment."  We will review these arguments.

---

[3]The legislature added the second sentence by amendment in 1993.  See 1993 Pub. Acts, ch. 387, § 1, effective May 17, 1993.  Section 2 of chapter 387, Pub. Acts, provides that this amendment was to be applied retroactively.

In <u>Allen</u>, the defendant had been sentenced and execution was delayed until a court setting the following month. He did not appear at the subsequent setting, and a capias was issued four days later. The opinion does not reveal whether the trial court had entered the judgments when the defendant pled guilty or whether this was reserved until the execution date. However, it appears that the capias was issued in that case because of the defendant's failure to appear at the next case setting, not because of "service of a sentence and violations of probation," as the defendant in the present matter has characterized. Subsequently, the holding in <u>Allen</u> was relied upon in Tennessee Attorney General Opinion No. 02-126 (2002), opining that Tennessee Code Annotated section 40-6-206 does not cause probation violation warrants to expire after five years. We conclude that the facts in <u>Allen</u> do not differ from those presented by the present appeal and, procedurally, the cases cannot be distinguished. Likewise, we disagree with the present defendant's related view that her legal posture was the same as if she had been indicted but never arrested. This claim ignores the fact that the court's minutes of June 4, 1992, recite that "the defendant says she <u>is guilty</u> of Driving Under the Influence" (emphasis in original) and that she waived her right to a jury and the constitutional monetary limit on fines. The minutes then recite that the court found the defendant guilty of DUI and pronounced her sentence:

> [T]he Court finds that the defendant is guilty of Driving Under the Influence, as charged in the lst Count and fixes the punishment at 11 months and 29 days in the Knox County Jail with the percentage of 75% to be served before the defendant is eligible for Release Classification Status and a fine of $250. This is a Class A Misdemeanor. Judgment is reserved until September 24, 1992. The defendant shall report to the Hamblen County Jail on June 4, 1992 to serve 46 hours of the sentence.

We are persuaded by the analysis in <u>Allen</u>, 1995 WL 764996, at *1, that Tennessee Code Annotated section 40-6-206 is intended to be "a housecleaning measure to unclog the computers and rid the justice system of stale, unserved, unadjudicated cases." Likewise, we conclude, as did <u>Allen</u>, that this statute does not provide refuge to a defendant who has been adjudicated guilty and sentenced, as this defendant was on June 4, 1992. Tennessee Code Annotated section 40-6-206 does not cause a capias, issued under these circumstances, to become void after five years. Accordingly, we conclude that the trial court erred in declaring in 2002 that the October 23, 1992, capias had expired and, thus, was void. The defendant's arrest and sentencing, pursuant to that capias, were lawful.

## II. Right to a Speedy Trial

In reviewing this claim, we first will determine the cause of the lengthy delay between the defendant's being sentenced at her last court appearance on June 4, 1992, and her October 2002 arrest on a capias, resulting in entry of a judgment.

According to the transcript of the defendant's plea of guilty, the trial court, just before sentencing on June 4, 1992, asked, "[W]ill [the defendant] need some time?" Defense counsel explained that the defendant was being transferred by her employer to Texas and wanted to serve the

remainder of her sentence in the Hamblen County Jail. Her attorney then asked, "[I]f we have completed the payment of fine and costs and restitution by [September 24], would it be necessary for her to come in?" and the court responded, "No. I'll just enter judgment and close the file." On September 24, counsel appeared and reminded the trial court that the defendant was "in Texas with her job, and [the court] had indicated that she wouldn't need to fly in for this if she was doing okay."[4] He said the defendant had paid $258 of the $625.50 court costs; that restitution had been made "[a]s far as [he] kn[e]w," the defendant having insurance to cover damages; and that he would send a letter to the Hamblen County sheriff seeking verification that she had completed the period she was to be incarcerated. Defense counsel then agreed to an additional resetting to October 23, 1992, to demonstrate that these matters had been taken care of.[5] However, at that setting, after the defendant's counsel advised the court that he "wrote her a letter and told her [payment of the balance of the fine and costs] absolutely had to be done by today, and I have not heard from her," the trial court directed that a forfeiture be taken.

Following a hearing on the defendant's claim that she had been denied her right to a speedy trial, the court determined that the delay was attributable to the defendant herself:

> It is clear that [when] the defendant entered a plea [she] was told her obligations and her appearance was [sic] waived upon the first hearing of September 24, 1992[.] [S]he was ordered to pay her fines and costs and restitution and judgment [were] reserved. The Court ordered, at that time, that there would be verification of the restitution and payment of the costs and the jail time. Because of noncompliance a forfeiture issued. It is clear that [the defendant] will suffer some consequences at this time should judgment enter, but it is further clear to the Court that [the defendant] did not suffer a violation of her speedy trial rights nor of any failure by the state to cause judgment to enter in her absence. [The defendant], according to the transcript of the evidence, was under obligation to do certain things which to this date there is no verification of her having complied with, and had those matters been dealt with she would not be suffering the inconveniences as well as the possible prejudice at this time. While it is apparent from the argument heard by the Court that [the defendant] probably knew little or nothing about the delay or the problem, and might have rectified it if she had known, the reasons for the delay were not those of the state, but of [the defendant's] failure to follow through her obligation. The Court finds that

---

[4] On appeal, the defendant describes, as occurring at the September 24, 1992, hearing, that "[the defendant] reported through her attorney . . . that she had paid court cost, served her sentence and insurance paid the damages." However, she did not have the option of "reporting through her attorney" unless the fine, costs, and restitution had been paid by that date. Since her lawyer reported that she had paid only a portion of the costs, the defendant had not been excused from appearing at the September 24 setting.

[5] On appeal, the defendant argues that "[n]o requirement was imposed that [she] be present at the October 23, 1992 hearing." This statement, while technically true, ignores the fact the defendant had been ordered to be present at the September 24, 1992, hearing if she had not paid the fine, costs, and restitution, which she had not. Since the defendant failed to appear at the September 24 hearing, we do not see the utility of the trial court's ordering her then to appear at the October 23 hearing.

judgment should enter at this time and that [the defendant] should be required to comply with her obligations.

On appeal, the defendant argues that the delay was not attributable to her and that it violated her rights to a speedy trial.

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court adopted the balancing test of Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972), to determine whether speedy trial rights had been denied:

In Barker v. Wingo, supra, the court accepted a "balancing test" in which the conduct of both the prosecution and defendant are weighed, which test of necessity compels the court to approach speedy trial cases on an ad hoc basis. In the Barker case the court discussed four specific factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted a claim to his right, and (4) whether defendant was prejudiced by the delay.

Bishop, 493 S.W.2d at 83-84. We have previously determined that the right to a speedy trial encompasses the sentencing proceedings in a criminal prosecution. See State v. Joseph Hart, No. 02C01-9902-CC-00075, 1999 WL 737780 (Tenn. Crim. App. Sept. 20, 1999). On appeal, the trial court's determinations as to speedy trial violations are reviewed for abuse of discretion. See State v. Jefferson, 938 S.W.2d 1 (Tenn. Crim. App. 1996).

We now will apply these considerations in determining whether the defendant was denied her right to a speedy trial.

### A. Length of Delay

Our supreme court concluded a delay of thirteen years, as occurred in State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996), was a factor weighing "favorably for the defendant" and clearly required an analysis of the remaining factors. However, in that case, the defendant was incarcerated in Alabama, and Tennessee made no effort to return him for trial. In the present case, by contrast, the defendant was on bond and failed to appear at a court setting and remained out of custody for ten years. She seeks an advantage from the lengthy delay for which the trial court determined, and we agree, she solely is at fault. While this fact may make it unnecessary for us to consider the additional Barker factors, we will do so because of the possibility of further appellate review.

### B. Reason for Delay

The defendant argues on appeal that "[i]t is unclear how [she], who knew nothing about the problem, was held responsible for not following through with an obligation she did not have." To support this argument, she asserts that either the prosecutor "failed" to present the judgment form to the trial court or, if it was presented, the trial court "failed" to sign it. Further, according to her

argument, the 1992 sentencing procedure is suspect, it being "unclear on what legal basis [the defendant] could be ordered to serve a sentence in jail and pay a fine before a judgment is entered." The trial court then compounded this error, according to the defendant, when on October 23, 1992, it issued a capias for her "to answer an indictment for DUI and Reckless Driving." Thus, although she had "fully complied with her obligations" on October 23, 1992, by paying the court costs, "the State, the Clerk and the Sheriff did nothing for over ten (10) years."[6] We disagree with each of these arguments because they ignore the key facts that the trial court reset the case from September 24, 1992, at the defendant's request, and only excused her appearance if she had paid the fine, costs, and restitution, which she had not. Her failure to appear and remaining out of custody for ten years were the sole causes of the delay.

## C. Demand for a Speedy Trial

As to this consideration, the defendant argues that "[n]o case requires a person who is unaware charges are pending against them demand a speedy trial." The defendant neglects to explain how, in making the partial payment on the fine and costs, she could not have known that she had not paid the total amount. While she may have been unaware of exactly what had occurred after she failed either to show she had completed her sentence or appear in court at the next setting, she should have been aware there would be consequences of this breach. Further, we note that letters sent to the defendant in 1992 by the court clerk and her counsel were returned, and both of these letters informed the defendant that a capias had been issued for her arrest. Accordingly, this factor, also, weighs against the defendant.

## D. Prejudice

The defendant argues that although she "did what she was required to do in 1992," she is being prejudiced by the delay. We disagree. The legal consequences of which she now complains are the direct result of her failure to obey the court's order at the June 4 hearing that she complete payment or return to court. She did neither. We conclude that the defendant's own inactions caused the prejudice she now claims, and the record supports the trial court's determination that the defendant was not denied her right to a speedy trial.

## CONCLUSION

Following our review of the foregoing authorities and reasoning, we conclude the capias in this case was not void, the trial court retained jurisdiction over this matter in 2003 for entry of the judgment, and the defendant was not denied her right to a speedy trial. Accordingly, the judgment

---

[6]We do not agree with the argument that she "complied" with her obligations by paying the remaining court costs on October 23, 1992. In fact, on that day, the trial court declared a forfeiture of the bond and declared that the $500 bond posted by the Freedom Bonding Company was to be paid to Knox County and applied to the costs.

of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE