

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,798

### STEVEN KENNETH STALEY, Appellant

### v.

### THE STATE OF TEXAS

### NO. AP-76,868

### EX PARTE STEVEN KENNETH STALEY, Applicant

### ON REVIEW FROM THE DETERMINATION OF EXECUTION COMPETENCY AND APPLICATION FOR A WRIT OF HABEAS CORPUS FROM CAUSE NO. C-2-009642-0387844-C IN THE CRIMINAL DISTRICT COURT NUMBER TWO TARRANT COUNTY

ALCALA, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion in which HERVEY and KEASLER, JJ., joined. MEYERS, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

**O P I N I O N**

In this case, we are asked to decide whether state or federal law disallows the execution of a mentally ill inmate who was previously found incompetent to be executed and later became competent only after he was involuntarily medicated pursuant to a court order. Steven Kenneth Staley, appellant,[1] raises this question in a subsequent application for a writ of habeas corpus and a motion for review under Texas Code of Criminal Procedure Article 46.05.[2] *See* TEX. CODE CRIM. PROC. arts. 11.071, § 5, & 46.05. Article 46.05 provides that a "person who is incompetent to be executed may not be executed" and permits appeal to this Court of a finding under that article. TEX. CODE CRIM. PROC. art. 46.05(a), (l). With respect to appellant's motion for review, we conclude that this Court has jurisdiction over this appeal pursuant to the current competency-to-be-executed statute, including jurisdiction to review the involuntary-medication order to the extent that it is intertwined with the trial court's

---

[1]    Staley is the applicant for purposes of the habeas application and the appellant for purposes of the Article 46.05 appeal, but, for consistency, we refer to him throughout the opinion as "appellant."

[2]    *See* TEX. CODE CRIM. PROC. art. 46.05(l); former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005). The competency-to-be-executed statute provides the procedure and the standard under which an inmate's competency to be executed is assessed. *See* TEX. CODE CRIM. PROC. art. 46.05(h). It states, "A defendant is incompetent to be executed if the defendant does not understand: (1) that he or she is to be executed and that the execution is imminent; and (2) the reason he or she is being executed." *Id*. It codifies the constitutional standards set forth in *Ford v. Wainwright*, 477 U.S. 399 (1996), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). *See Green v. State*, 374 S.W.3d 434, 440 (Tex. Crim. App. 2012) (explaining that competency-to-be-executed statute codifies constitutional standards delineated by Supreme Court in *Ford* and *Panetti*).

ruling that appellant is now competent to be executed.[3] As to the merits of the appeal, we hold that the trial court's order mandating involuntary medication of appellant was not permitted under the competency-to-be-executed statute and did not meet the requirements of other statutes that may permit involuntary medication. Because the trial court lacked authority to render it, we vacate the trial court's involuntary-medication order. Furthermore, we determine that, but for that unauthorized order, the evidence conclusively shows that appellant is incompetent to be executed, and, therefore, we also vacate the trial court's order finding appellant competent to be executed.[4]

## I. Background

In 1991, appellant was convicted of capital murder in Tarrant County. Appellant and two others rounded up a group of employees at a restaurant, threatened them with firearms, took their possessions, and then killed the manager after taking him hostage. A jury found appellant guilty and answered the special issues in the affirmative. After the trial court sentenced him to death, appellant exhausted his appellate remedies and was denied relief on two applications for a writ of habeas corpus.[5] The trial court set his execution date for

---

[3]     Appellant filed a "Brief In Support of Motion to Send Record To Court of Criminal Appeals, Notice of Appeal, And Application for Writ of Habeas Corpus Under Article 11.071, Texas Code of Criminal Procedure." For most of his nine grounds, appellant presents a single set of arguments that are apparently intended to apply both to the appeal and to the writ application.

[4]     Regarding the competency claims raised in the application for a writ of habeas corpus, we dismiss those claims as non-cognizable. *See Green*, 374 S.W.3d at 446 (holding that competency-to-be-executed claims "not cognizable" on habeas corpus).

[5]     *See Staley v. State*, 887 S.W.2d 885 (Tex. Crim. App. 1994) (affirming conviction and
(continued...)

February 2006. Since then, the trial court has held two hearings on the matter of whether appellant is competent to be executed. He was found incompetent at the first hearing and competent at the second hearing.

## A. The First Competency Hearing

The month before the scheduled execution in 2006, appellant filed a motion with the trial court challenging his competency to be executed pursuant to the then-applicable competency-to-be-executed statute. *See* former TEX. CODE CRIM. PROC. art. 46.05 (Vernon 2005). The trial court ordered a psychiatric evaluation of appellant.

The court held a hearing on appellant's motion, at which the medical experts who had evaluated appellant, Dr. Randall Price and Dr. Mark Cunningham, testified. They explained that, although appellant understood that he was to be executed, he did not have a rational understanding of the reason for his execution.[6] They testified that he suffered a severe, chronic psychosis, namely paranoid schizophrenia, with which he had been routinely diagnosed for nearly 15 years, and that his condition had deteriorated over time. They stated that, since 1993, appellant had been prescribed various psychotropic medications, most notably Haloperidol ("Haldol"), in an effort to control the symptoms of his illness. However,

---

(...continued)
sentence on direct appeal); *Ex parte Staley*, No. WR-37,034-01 (Tex. Crim. App. Sept. 16, 1998); *Ex parte Staley*, 160 S.W.3d 56 (Tex. Crim. App. 2005). The prior writ applications challenged the judgment on various grounds not related to the present issues.

[6]     Another expert also testified that appellant did not understand that his execution was imminent.

they noted that he had not consistently complied with that prescription and, in the months preceding the competency evaluation, had frequently refused medication.

Dr. Cunningham, a clinical and forensic psychologist, testified that appellant had demonstrated numerous symptoms of psychosis over the course of many years, including self-inflicted injuries, grossly neglected personal hygiene, resting in his own excrement and urine, irregular eating and sleeping habits, including refusing food and fluids, delusions of paralysis, and lying on one spot in his cell so long as to rub a bald spot in the back of his head. He explained that appellant had a history of "spontaneously and repeatedly refusing medication" so that long-term stabilization "may well require" compulsory medication. He opined that it would be "good medical practice" to medicate appellant to control his symptoms.

Dr. Price, also a clinical and forensic psychologist, testified that appellant's symptoms included "syntactical aphasia," which he described as "word salad," or the nonsensical ordering of words, as well as the regular use of fictitious language. He said that during those periods when appellant was compliant with his prescription, he showed no overt signs of decompensation, but that he had frequently refused medication because he denied his illness and believed the medication was an attempt to "poison" him.

Based on this testimony, the trial court ruled that appellant was incompetent to be executed. Afterward, the case was forwarded to this Court in accordance with the then-applicable statute. *See id.* at 46.05(k). The next day, the trial court withdrew the execution

date.[7] Nevertheless, appellant later filed a motion to stay the execution with this Court. This Court issued an order dismissing his motion as moot because the trial court had already withdrawn the execution date. *Ex parte Staley*, No. WR-37,034-03 (Tex. Crim. App. April 12, 2006) (per curiam). The order advised the trial court, however, of its statutory duty to conduct periodic evaluations of appellant. *See id.* (citing former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005)).[8]

The following month, the State filed a motion with the trial court seeking involuntary medication of appellant. In support, it cited both a medical purpose—to control the symptoms of appellant's psychosis and ease his suffering as a result of his mental illness—and the State's interest in enforcing the judgment. Appellant disputed both purposes. He challenged the medical purpose by arguing that psychotropic drugs can yield harmful side effects. He also contended that "artificial competence" achieved by medication does not constitute competence under the competency-to-be-executed statute, the federal Constitution, or the Texas Constitution.

---

[7] The trial court's withdrawal of the execution date was premised on Texas Code of Criminal Procedure Article 43.141, which governs the scheduling, modification or withdrawal of an execution date. *See* TEX. CODE CRIM. PROC. art. 43.141.

[8] We note that the competency-to-be-executed statute permits a trial court to order periodic re-examination of an incompetent inmate by mental health experts only after this Court has entered a formal stay of execution, which it did not do in this case. *See* TEX. CODE CRIM. PROC. art. 46.05(m); former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005). Although it is arguable that the trial court was without authority to conduct periodic re-evaluations of appellant absent a stay, let alone to order him medicated, we do not consider that argument because it was not advanced by the parties and would only serve as an alternative disposition leading to the same result in this appeal.

The trial court held a hearing at which it heard arguments from the State and appellant. Based largely on the evidence that had been introduced at the competency hearing, the trial court granted the motion and entered an order authorizing the involuntary medication of appellant. It concluded that (1) the State has a legitimate interest in enforcing the sentence, which is not outweighed by appellant's interest in avoiding medication; (2) medication is the least intrusive and, in fact, only method of achieving competency; (3) compelled medication is in appellant's "best medical interest" because (a) without it, he will suffer "frightening delusions and general disorder within his mind" and (b) there is no evidence that he had suffered any side effects from the medication; and (4) without medication, appellant posed a danger to himself and others.

By mandamus and direct appeal, appellant attempted to challenge the trial court's order requiring involuntary medication, but those challenges were unsuccessful. This Court denied him leave to file an application for a writ of mandamus and prohibition and a motion for stay, but presumably this denial was based on his failure to show that a ministerial duty was at issue. After that, this Court, by written opinion, dismissed his direct appeal for lack of jurisdiction on the basis that the involuntary-medication order was a non-appealable, interlocutory order. *Staley v. State*, 233 S.W.3d 337 (Tex. Crim. App. 2007) ("*Staley I*"); *see* former TEX. CODE CRIM. PROC. art. 46.05 (Vernon 2005). By mid-2006, therefore, appellant was found incompetent to be executed but was to be involuntarily medicated pursuant to the trial court's order, and no litigation transpired for six years.

**B. The Second Competency Hearing**

In 2012, the State filed with the trial court a "request for further competency examination" under the current competency-to-be-executed statute, and the trial court held a second competency hearing. *See* TEX. CODE CRIM. PROC. art. 46.05(k), (m).

The trial court received testimony from Dr. Price and another clinical and forensic psychologist, Dr. Kristi Compton, who each determined that appellant was competent to be executed. By April 2012, Dr. Price had examined appellant five times. Dr. Price discussed his findings from examinations done in June 2006 and October 2010. He stated that, although appellant was experiencing delusional thoughts such as having "180 zillion dollars," his psychotic and schizophrenic symptoms were under control with about 60 percent compliance with the Haldol prescription. Dr. Price testified that appellant knew many of the details about his litigation and the crime. He knew the names of the defense attorneys, the prosecutors, and the victim, and that he was convicted of killing a man during the course of a robbery of a restaurant. Appellant said that he thought he had received a fair trial except for the admission of certain extraneous-offense evidence during the guilt stage. He knew that the death penalty was, in his words, to "retribute the public for a heinous crime." He understood that the process for the death penalty is lethal injection after "6:00 p.m. at night on the date of your execution" and could name two of the three lethal fluids. He explained death as permanently going to sleep and said he did not believe in an afterlife. Dr. Price acknowledged that appellant did not actually believe that he would be executed because he

was convinced that his attorneys would obtain a stay. Dr. Price opined that appellant understood (1) that he was to be executed and that his execution was imminent and (2) the reason for his execution, thus satisfying the statutory two-pronged standard for competency to be executed. *See* TEX. CODE CRIM. PROC. art. 46.05(h). In addition to the competency finding, Dr. Price determined that appellant was not mentally retarded.

Dr. Price further testified as to the effects of the medication. He explained that, in his opinion, Haldol is medically beneficial to a patient who has the symptoms of schizophrenia experienced by appellant. Without the prescription, a person with symptoms of schizophrenia is in a distressed state of mind, suffering from an illness that is "creating havoc" in his head. He acknowledged, however, that the side effects to Haldol can be "unpleasant" in that it is a "major tranquilizer," slows down thinking and functioning, may affect a person's use of his arms and legs, and may cause dryness of the mouth. Dr. Price explained that these side effects were controlled in appellant, who was taking another drug, Cogentin, for that purpose. He further confirmed that no evidence suggested that appellant has suffered any harmful side effects. He testified that, without medication, appellant will continue to suffer "frightening" delusions and other mental disorders and that appellant has been asymptomatic while on medication.

The State also introduced a report by Dr. Compton detailing her findings from her examination of appellant in April 2012. The report indicated that, in October 2010, appellant's condition had deteriorated and he was "catatonic." He heard auditory

hallucinations and believed an "electric polygraph" transmitted thoughts into his head that were not his own. The report indicated that, as of 2011, treatment providers doubled his intake of Haldol and that, as of the time of the examination in 2012, his condition had improved. He no longer heard voices or experienced other hallucinations and reported "a positive mood state with no severe depressive symptoms." He continued to experience delusions of grandeur, but his thought processes appeared "concrete." The report also showed that appellant reported "being forced to take medication because he was told 'a new law says I have to take the medication'" and that if he refused "oral medication then he is strapped down and injected." Her report further indicated that animal studies have shown that the use of Haldol caused a ten to twenty percent reduction in brain cortex volume after eight weeks of use.

In its ruling after both sides rested, the trial court, in accordance with the opinions of the two experts, found that appellant was competent to be executed, but only because of the effects of the forcible medication. The trial court stated,

> When [appellant] is on Haldol and Zoloft, that his understanding is equivalent to competency, that he is competent, that if he—and I think both doctors have stated that if he is taken off this medication, that he could deteriorate and decompensate. But based upon the fact that he has been on this medication, that he is competent at this time. And that is both from the State's expert, Dr. Price, and also the Defense's expert, Dr. Compton. As such, the Court is going to make a finding that Mr. Staley is competent at this time. . . .

The trial court scheduled appellant's execution for May 2012. Appellant sought a stay of execution in this Court, which we granted to address the disputes currently before us. *Ex*

*parte Staley*, No. WR-37,034-05, 2012 Tex. Crim. App. Unpub. LEXIS 482, at *3 (Tex. Crim. App. May 14, 2012) (per curiam) (not designated for publication). We sustain appellant's seventh issue, which challenges the trial court's authority to involuntarily medicate him for purposes of making him competent to be executed.[9] Having determined that the trial court lacked the authority to order involuntary medication under these circumstances, we sustain appellant's first and second issues on the basis that, but for the unauthorized involuntary-medication order, the evidence conclusively shows that appellant is incompetent to be executed.[10] We do not reach any of appellant's constitutional challenges that may be involved in those issues, nor his remaining issues that contend that (1) the trial

---

[9]     Appellant presents this challenge in issue seven:

7.  The trial court's April 11, 2006 [involuntary-medication] order exceeds the district court's jurisdiction under Article 46.05 of the Texas Code of Criminal Procedure.

[10]    Appellant presents this challenge in issues one and two:

1.  The court erred in finding that appellant was competent to be executed because he does not understand that he is to be executed and that execution is imminent and the reason he is being executed in violation of the eighth and fourteenth amendments to the U.S. Constitution.

2.  The court erred in finding that appellant was competent to be executed because he does not understand that he is to be executed and that execution is imminent and the reason he is being executed in violation of Section 13 of Article I of the Texas Constitution.

court's involuntary-medication order violates the federal and state constitutions,[11] and (2) that he is severely insane to the point that he is functionally mentally retarded and his execution, therefore, would violate the federal and state constitutions.[12]

**II**. **This Court Has Jurisdiction Over the Appeal From the Trial Court's Finding of**

---

[11]  Appellant presents this challenge in issues five, six, eight, and nine:

5.  Appellant's continued treatment with Haloperidol to make him competent to be executed violates the prohibition against cruel and unusual punishment under the eighth and fourteenth amendments to the U.S. Constitution because it is causing irreparable damage to his brain by causing a reduction in brain cortex volume.

6.  Appellant's continued treatment with Haloperidol to make him competent to be executed violates the prohibition against cruel and unusual punishment under Article I, Section 13 of the Texas Constitution because it is causing irreparable damage to his brain by causing a reduction in brain cortex volume.

8.  Forcible medication for the purpose of rendering an inmate competent for execution violates the prohibition against cruel and unusual punishment under the eighth and fourteenth amendments to the U.S. Constitution.

9.  Forcible medication for the purpose of rendering an inmate competent for execution violates the prohibition against cruel and unusual punishment under Article I, Section 13 of the Texas Constitution.

[12]  Appellant presents this challenge in issues three and four:

3.  Appellant's execution would violate the prohibition against cruel and unusual punishment under the eighth and fourteenth amendments to the U.S. Constitution because he is severely insane to the point where he is functionally mentally retarded and to execute him would violate the prohibition against cruel and unusual punishment contained in the eighth and fourteenth amendments to the U.S. Constitution.

4.  Appellant's execution would violate the prohibition against cruel and unusual punishment under Art. I, § 13 of the Texas Constitution because he is severely insane to the point where he is functionally mentally retarded and to execute him would violate the prohibition against cruel and unusual punishment contained in Section 13 of Article I of the Texas Constitution.

**Competency Under the Current Competency-To-Be-Executed Statute[13]**

As an initial matter, we determine that this Court has jurisdiction to review this competency appeal because the the current competency-to-be-executed statute applies to this case. That statute, unlike its predecessor, expressly permits appeal of any competency determination to this Court. *See* TEX. CODE CRIM. PROC. art. 46.05(l). We further conclude that we have jurisdiction to review the involuntary-medication order because it is intertwined with the trial court's finding that appellant is competent. We explain these conclusions in more detail below.

**A. Current Statute Applies to This Case**

The parties dispute whether the former or current competency-to-be-executed statute applies to this case. That distinction is relevant here because under the former competency-to-be-executed statute, only a finding of incompetence could be appealed. *See* former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005); *Ex parte Caldwell*, 58 S.W.3d 127, 130 (Tex. Crim. App. 2000). The State argues that the former version of the statute applies and that appellant is thus not permitted to challenge the trial court's finding that he is competent. Appellant disagrees and urges that the current version of the statute should apply to his case.

In *Ex parte Caldwell*, this Court dismissed an inmate's appeal of the trial court's competency finding because we determined that the former competency-to-be-executed

---

[13]    Although neither party directly challenges this Court's jurisdiction to address appellant's appeal from the trial court's competency determination, a court may always address jurisdictional matters before reaching the merits of an appeal. *See White v. State*, 61 S.W.3d 424, 427 n.2 (Tex. Crim. App. 2001).

statute did not permit review of "the finding that the defendant is competent to be executed." *Caldwell*, 58 S.W.3d at 130 (citing former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005)). In reaching our conclusion, we relied on the plain terms of the former statute, which authorized this Court to take subsequent action in a competency proceeding only upon the trial court's "finding by a preponderance of the evidence that the defendant is incompetent to be executed." *See* former TEX. CODE CRIM. PROC. art. 46.05(k). By contrast, the current statute, which became effective on September 1, 2007, expressly authorizes this Court to review a finding that a defendant is competent. *See* TEX. CODE CRIM. PROC. art. 46.05(l) (statute amended by Act of May 23, 2007, 80th Leg., R.S., ch. 677, § 1, 2007 TEX. GEN. LAWS 677 (H.B. 1545)).[14]

---

[14]    In pertinent part, the current competency-to-be-executed statute states,

> (g) If the trial court does not determine that the defendant has made a substantial showing of incompetency, the court shall deny the motion and may set an execution date as otherwise provided by law.

> . . . .

> (k) The trial court shall determine whether . . . the defendant has established by a preponderance of the evidence that the defendant is incompetent to be executed. *If the court makes a finding that the defendant is not incompetent to be executed, the court may set an execution date as otherwise provided by law.*

> (l) *Following the trial court's determination under Subsection (k)* and on motion of a party, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), the appropriate documents for the court's review and entry of a judgment of *whether to adopt the trial court's order, findings, or recommendations issued under Subsection (g) or (k).* . . .

TEX. CODE CRIM. PROC. art. 46.05 (g), (k), (l) (emphasis added).

The State filed its motion and the trial court issued its competency finding in 2012, long after the current statute became effective. Appellant points to that motion and trial court's finding as invoking the current statute. The State, however, suggests that the former competency-to-be-executed statute should apply instead of the current statute because the trial court's first finding of incompetency was made prior to the effective date of the current statute.

The State's 2012 motion asked the trial court to find appellant competent based on the results of examinations that had been conducted under the competency-to-be-executed statute's requirement that the trial court order the periodic re-examination of appellant to determine whether he remained incompetent. *See* TEX. CODE CRIM. PROC. art. 46.05(m); former TEX. CODE CRIM. PROC. art. 46.05(k) (Vernon 2005). This requirement, present in the former and current versions of the statute, is part of a trial court's continued jurisdiction over the matter of a defendant's competency to be executed. *See* TEX. CODE CRIM. PROC. art. 46.05(b) (trial court "retains jurisdiction over motions filed by or for a defendant under this article"); TEX. CODE CRIM. PROC. art. 43.141 (convicting court has continuing authority to set execution date). This continued jurisdiction could last an extended period of time, from the time that a defendant's death sentence is imposed until his death by execution or natural causes or until he obtains extraordinary relief from a writ of habeas corpus that reverses a death sentence. In light of this extended post-conviction period, the Legislature specified that the current statute would apply only to motions filed on or after September 1, 2007. The

legislative note to the amendment stated that the amendment

> applies only to a motion filed under Article 46.05, Code of Criminal Procedure, on or after the effective date of this Act. A motion filed under that article before the effective date of this Act is covered by the law in effect on the date the motion was filed, and the former law is continued in effect for that purpose.

Act of May 23, 2007, 80th Leg., R.S., ch. 677, at § 2. Here, because the State filed its motion to find appellant competent in 2012, the current competency-to-be-executed statute applies to the review of the trial court's competency finding, and that statute permits this Court to review the trial court's order finding appellant competent.[15]

Having determined that this Court has jurisdiction to review the trial court's competency order, we must next address whether this Court has jurisdiction to address appellant's complaint that his competence was "artificial" due to his involuntary medication.

### B. Involuntary-Medication Order is Intertwined with Trial Court's Finding That Appellant Is Competent To Be Executed

Appellant contends that the trial court erred by finding him competent to be executed under the competency-to-be-executed statute because his competence has been achieved artificially through court-ordered involuntary medication. Although it disputes the merits of

---

[15] Under Subsection (m), the competency-to-be-executed statute gives the trial court continuing authority to periodically order that a defendant be reexamined by mental-health experts to determine his competency, which the trial court did in this case. TEX. CODE CRIM. PROC. art. 46.05(m). In 2012, after experts had found that appellant was competent following these periodic examinations, the State filed a motion under that subsection, and it is that motion that invokes the current competency-to-be-executed statute. We do not construe the State's previous motion for further evaluation as initiating competency proceedings "on the defendant's behalf" under Subsection (c) of that statute. *See id.* at art. 46.05(c).

appellant's claim, the State essentially concedes that this Court has jurisdiction to address appellant's argument that he is "artificially competent" because that argument "goes to the heart of whether he is actually competent." On the other hand, the State disputes that the involuntary-medication order itself is reviewable under the competency-to-be-executed statute because that statute limits the scope of this Court's review to the narrow confines of the trial court's competency determination. The State urges that "[w]hether the trial court's medication order was appropriate, legally justified, or constitutional, is beyond the purview of article 46.05."

We disagree with the State's position and hold that we may properly review the trial court's involuntary-medication order within the scope of our competency-determination review. For purposes of understanding the underlying proceedings, we briefly explain why we have jurisdiction over the present appeal but did not have jurisdiction over an earlier appeal from this involuntary-medication order. In 2006, this Court dismissed appellant's appeal from the involuntary-medication order because we determined that, under the prior competency-to-be-executed statute, that order was a non-appealable, interlocutory order. *Staley I*, 233 S.W.3d at 337; *see* former TEX. CODE CRIM. PROC. art. 46.05 (Vernon 2005). In *Staley I*, this Court reasoned that in order for it to obtain jurisdiction over the appeal, the appellant had to appeal a "judgment of guilt or other appealable order." *Id.* at 338 n.4 (citing TEX. R. APP. P. 25.2(a)(2)). Appellant had not presented either. Rather, he challenged the trial court's medication order, which was a stand-alone order that was separate and distinct

from the trial court's finding that he was incompetent. *See id*. Because the finding of incompetency was in his favor, appellant could not present any appeal under the former competency-to-be-executed statute. *See id*. at 338 n.5 (holding that involuntary-medication order was unreviewable because "[n]either the withdrawal of an execution date nor a review of a finding of incompetence" was at issue, interpreting former TEX. CODE CRIM. PROC. art. 46.05(k)).

In contrast to *Staley I*, the present challenge to the trial court's involuntary-medication order comes to this Court as a challenge to the finding of competency under the current competency-to-be-executed statute, which permits this type of appeal. *See* TEX. CODE CRIM. PROC. art. 46.05(l) (permitting appeal to this Court from any competency determination). The case before us is not merely an interlocutory appeal of a non-appealable order. *Compare Staley I*, 233 S.W.3d at 338 n.4. Instead, the trial court's ruling that appellant is competent to be executed only because of his involuntary medication makes the trial court's medication order an inextricable part of its competency determination. Because the involuntary-medication order was entered for the specific purpose of making appellant competent to be executed, its validity is reviewable as a core element of this Court's competency review. We hold that this Court has jurisdiction to review (1) the trial court's competency finding under the competency-to-be-executed statute because the current statute applies to this case and (2) the trial court's involuntary-medication order because that order is intertwined with appellant's challenge that forcible medication has made him artificially competent. *See*

*Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399 (Tex. 1979) (explaining that "implied powers are those which can and ought to be implied from an express grant of power" and finding appellate jurisdiction because no other mechanism existed to review lower court's decision).

### III. Trial Court Erred By Finding Appellant Competent Following Court-Ordered Involuntary Medication

As explained in more detail below, we conclude that the trial court lacked the authority to order the involuntary medication of appellant and that the competency finding must be reversed because that determination is wholly dependent on that unauthorized involuntary medication of appellant.

### A. Trial Court Lacked Authority to Involuntarily Medicate Appellant Under the Evidence Presented

In his seventh claim, appellant argues that the trial court lacked jurisdiction and authority under the competency-to-be-executed statute to order him involuntarily medicated.[16] The State responds that the trial court's order "is nothing but a vehicle for

---

[16] The Supreme Court has held that, under certain circumstances, the involuntary medication of inmates may be constitutionally permissible. "'[T]he Due Process Clause permits the State to treat a [non-death-row] prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others, and the treatment is in the inmate's medical interest.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 227 (1990)). The Supreme Court has never addressed whether it would violate the federal constitution to involuntarily medicate an inmate to make him competent to be executed, and we do not reach that ultimate question in this case because that is a separate question from whether a trial court has the authority to order involuntary medication.

enforcing its own judgment and sentence, and the mandate of" this Court, which falls within a trial court's general judicial power. We disagree with the State.

### 1. Applicable Law for Trial Court's Post-Conviction Power

A trial court must derive its jurisdiction from either the Texas Constitution or legislative enactments. *State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012). When a conviction has been affirmed on appeal and the mandate has issued, general jurisdiction is not restored in the trial court. *State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002) (plurality op.).

A trial court can obtain post-conviction jurisdiction over a case under many different statutes, for example, to set the date of execution, conduct DNA testing, or, as here, determine whether an inmate is competent to be executed. *See* TEX. CODE CRIM. PROC. arts. 43.141(b) ("If an original application is not timely filed under Article 11.071 . . . the convicting court may set an execution date."); 64.01(a-1) (authorizing convicting court to hear motions for DNA testing); and 46.05(b) ("The trial court retains jurisdiction over motions filed by or for a defendant under this article."). These post-conviction statutes define the scope of the trial court's jurisdiction. *See Holloway*, 360 S.W.3d at 485. Furthermore, a trial court may have jurisdiction over a matter, but no authority to act.[17] *Id.*

---

[17] This Court recently explained the difference between a trial court's jurisdiction and authority. We stated,

> Jurisdiction is typically used to refer to the power of a court to hear a controversy and make decisions that are legally binding on the parties involved, also commonly

(continued...)

**2. Competency-To-Be-Executed Statute Does Not Authorize Trial Court to Order Involuntary Medication**

A plain reading of the competency-to-be-executed statute indicates that the trial court lacked the authority to order appellant involuntarily medicated. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). In relevant part, the competency-to-be-executed statute provides that, after an execution is stayed on the basis of incompetency, "the trial court shall periodically order that the defendant be reexamined by mental health experts to determine whether the defendant is no longer incompetent to be executed." TEX. CODE CRIM. PROC. art. 46.05(m). Aside from the provision permitting re-examination, the statute does not authorize the trial court to take any other action with respect to a defendant found incompetent under that statute. *See id.*

The State argues that the trial court had inherent or implied authority to enter the medication order as necessary to carrying out the sentence. In support, it cites *Kelley v. State* for the proposition that judicial power under the Texas Constitution includes the power to execute the judgment. 676 S.W.2d 104, 107 (Tex. Crim. App. 1984) (determining that civil

---

(...continued)

> referred to as subject-matter jurisdiction. Jurisdiction, then, is vested in the actual judicial body, the court. Authority, on the other hand, may be used to refer to the power of an individual—the judge who presides over the court—to act under that grant of jurisdiction. A lack of authority, therefore, is not always co-extensive with a lack of jurisdiction; a judge's lack of authority to act in a particular manner will not necessarily call into doubt the court's jurisdiction over the particular case.

*State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012) (internal citations and quotation marks omitted).

statute (1) did not create "courts" with independent jurisdiction, but rather permitted magistrates to assist district-court judges in certain limited matters, and (2) was not unconstitutional). As noted in *Kelley*, this Court has long construed "'[j]udicial power' as envisioned by the Constitution [to] embrace[] '(1) The power to hear facts, (2) the power to decide the issues of fact made by the pleadings, (3) the power to decide the questions of law involved, (4) the power to enter a judgment on the facts found in accordance with the law as determined by the court, (5) and the power to execute the judgment or sentence.'" *Id.* (quoting *Morrow v. Corbin*, 62 S.W.2d 641, 645 (Tex. 1933)).

We disagree with the State that the trial court's general power under the Texas Constitution authorized the court's order in this case. With respect to a defendant's competency to be executed, the Legislature has limited the trial court's general power to execute its judgment by specifically prohibiting the execution of an incompetent inmate. *See* TEX. CODE CRIM. PROC. art. 46.05. Aside from permitting it to periodically reexamine an incompetent inmate, the Legislature did not authorize the trial court to take any collateral steps to restore the inmate to competency. *See id.*[18]

---

[18]    In his dissenting opinion, Judge Meyers suggests that the involuntary medication of appellant is authorized by the Texas Constitution. *See* TEX. CONST. Art. V, § 8; *Kelley v. State*, 676 S.W.2d 104, 107 (Tex. Crim. App. 1984) (stating that constitution empowers district court to "execute the judgment or sentence"). The jurisdiction or authority to execute a sentence, however, is not unlimited and cannot be invoked as the basis to permit a court to take any collateral act to ensure that its ultimate sentence is carried out. For example, a district court has the authority to set an execution date, but the Code of Criminal Procedure limits the circumstances under which the execution date may be withdrawn. *See* TEX. CODE CRIM. PROC. art. 43.141. And a district court lacks the authority to specify the procedures by which an inmate will be executed; that decision is left to the director

(continued...)

This Court has addressed the limits to post-conviction jurisdiction in *State v. Holloway,* 360 S.W.3d at 485. In that case, we examined whether Chapter 64 of the Texas Code of Criminal Procedure, which governs post-conviction motions for DNA testing and to which we refer as the "DNA statute," authorized the trial court to grant Holloway a new trial after DNA testing produced exculpatory results. *Id*. at 482 (analyzing TEX. CODE CRIM. PROC. ch. 64). Holding that it did not, we first noted that, "on its face," the DNA statute did not expressly authorize the trial court to grant a new trial or to take any remedial action. *Id*. at 486-87. We observed that "the only substantive *order* that Chapter 64 contemplates is the one that grants or denies the movant's request for DNA testing." *Id*. at 486. Because the statute, by its plain language, authorized the trial court only to make a finding as to whether a defendant is entitled to testing, we concluded that the language "expresses the evident

---

(...continued)

of correctional institutions. *See id.* at art. 43.14 (execution procedure "determined and supervised by" director of correctional institutions division). Although the Texas Constitution gives it jurisdiction to execute a sentence, the district court plainly does not have unlimited authority in deciding all the parameters for carrying out a sentence of death.

Similarly, under the Texas Constitution, this Court has jurisdiction to issue post-conviction writs in criminal cases, but our power to grant subsequent writs has been limited by the Legislature in such a way as to preclude our consideration of those writs under certain circumstances. *See Ex parte Sledge,* 391 S.W.3d 104, 109 (Tex. Crim. App. 2013) (stating that applicant raising procedurally barred claim on habeas corpus "cannot call upon [this Court's] general authority" to grant post-conviction relief in light of "plain limitations" upon that power) (citing TEX. CODE CRIM. PROC. art. 11.07, § 4(a)). We have held that this Court's general grant of authority in the Texas Constitution may be limited or defined by the parameters set forth by the Texas Legislature. *See id.* at 108, 109 n.24 (citing "legislative prerogative" to regulate post-conviction habeas corpus procedure). Even if we assume that the trial court had the general jurisdiction to see that appellant's death sentence was carried out, it lacked the authority to order the collateral act that would transform an otherwise unconstitutional event—the execution of an incompetent person—into a constitutional one—the execution of a person who is competent because of involuntary medication.

legislative purpose" of the DNA statute, which was to provide a defendant "an avenue for post-conviction forensic DNA testing—and no more." *Id*. at 487.

Holloway nevertheless argued, as the State does in the present case, that the trial court had "implicit authority" to order a new trial "because it was in furtherance of the 'jurisdictional purpose'" of the DNA statute. *Id*. at 487-88. We rejected this contention, noting that the "jurisdictional purpose" of that statute was "simply to provide deserving applicants with a mechanism for post-conviction DNA testing and a favorable finding on the record if justified by that testing; it does not include any other remedy or form of relief in the convicting court." *Id*. at 488. We concluded that permitting the trial court to take that extra-statutory action would conflict with the plainly expressed jurisdictional purpose of the DNA statute. *Id*.; *see Wolfe v. State*, 120 S.W.3d 368, 372 (Tex. Crim. App. 2003) (observing that trial court's jurisdiction and authority under DNA statute limited to that prescribed by that statute).

Here, similarly, we conclude that the trial court's involuntary-medication order was not authorized by the competency-to-be-executed statute. *See* TEX. CODE CRIM. PROC. art. 46.05. The language of that statute evinces its purpose of enabling defendants to seek a determination as to their competency to be executed and to obtain a stay of execution upon a finding of incompetency. *See id.* Nothing in the statute permits the trial court, once it has found a defendant incompetent, to take any action other than ordering periodic reevaluation of the defendant. *See id.* The statutory language plainly and strictly limits the trial court's

authority in competency-to-be-executed proceedings, and application of that language does not yield an absurd result. *See Boykin*, 818 S.W.2d at 785-86. In light of the plain language expressly limiting the trial court's role to ordering periodic reevaluations of an individual who has been found incompetent and to determining whether he is competent, the trial court's extraordinary measures aimed at restoring appellant's competency through his involuntary medication cannot be characterized as mere actions in furtherance of the statute's jurisdictional purpose. *See Holloway*, 360 S.W.3d at 488.[19]

We cannot conclude that ordering treatment of any kind for the specific objective of restoring an inmate to competency merely furthers the court's ability to evaluate and make a determination regarding his competency as permitted by the competency-to-be-executed statute. *See* TEX. CODE CRIM. PROC. art. 46.05(m). The trial court's order in this case, therefore, was not implicitly authorized under the statute. *Id.*

---

[19] Because the language is plain, we do not resort to an extratextual analysis. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We note, however, that the Legislature has clearly set forth the parameters for involuntary medication of people in other contexts. In the statute governing competency-to-stand-trial proceedings, for example, the Legislature detailed procedures for restoring a defendant's competency, which include involuntary medication. *See* TEX. CODE CRIM. PROC. arts. 46B.073 & 46B.086. The involuntary-medication provision specifically authorizes the State to file a motion to compel, and the trial court to order, involuntary medication under certain circumstances and if certain standards are met. *Id.* at art. 46B.086. By contrast, nothing in the competency-to-be-executed statute refers to or incorporates these procedures or criteria or otherwise authorizes such action. *See id.* at art. 46.05. The absence of the authorizing language in the competency-to-be-executed statute as compared to the presence of the authorizing language in the competency-to-stand-trial statute suggests that the Legislature knows how to authorize the involuntary medication of a person and opted not to authorize that action in this case.

### 3. No Other Statute Permits Post-Conviction Judicial Authorization of Involuntary Medication of Inmates

Although Texas permits the involuntary medication of people in limited circumstances, the record does not show that those circumstances existed here. Specifically, prison regulations permit the involuntary medication of inmates in limited circumstances. And, in limited circumstances, courts may order the involuntary medication of people who are involuntarily committed or incompetent and awaiting trial. To the extent that they might be applicable to this case, neither of those procedural vehicles was invoked here.

In Texas, inmates may be involuntarily medicated following a limited, non-judicial administrative process set forth by the Texas Correctional Managed Health Care Committee. *See* Texas Correctional Managed Health Care Policy Manual, § I-67.1, *Compelled Psychoactive Medication For Mental Illness* (October 15, 2012), *available at* http://www.cmhcc.state.tx.us/CMHC_Policy_Manual/I/I-67.1%20(1012).pdf.[20] In a non-emergency situation, an inmate may be compelled to take psychoactive medication when failure to do so "[i]s likely to result in continued suffering from severe and abnormal mental, emotional and physical distress or deterioration of the patient's ability to function independently." *Id.* at 3, § I-B. This process does not involve an adversarial hearing before

---

[20]     Some states permit penitentiaries to institute procedures for involuntarily medicating inmates pursuant to a determination by a panel of medical professionals. *See Harper*, 494 U.S. at 215-16 (Washington state policy allowed prison authorities to administer medication to inmates involuntarily); *Sullivan v. Flannigan*, 8 F.3d 591, 597 (7th Cir. 1993) (Illinois has two-person "treatment review committee" composed of physician and prison administrator); *see also* 28 C.F.R. § 549.46 (federal law requiring administrative proceeding prior to involuntary medication of inmate). Other states require a court order. *See Commonwealth v. Sam*, 952 A.2d 565, 567 (Pa. 2008).

a judge, but rather requires an administrative hearing before a "nontreating, psychiatrist/psychiatric mid-level practitioner." *Id*. at 3, § V-D. This administrative process was not implemented in the present case.

Furthermore, although trial courts may forcibly medicate patients receiving inpatient mental-health services, that provision does not apply to inmates facing execution. *See* TEX. HEALTH & SAFETY CODE, Title 7, Subtitle C, Ch. 574 ("Court-Ordered Mental Health Services"); *id.* at subchapter G ("Administration of Medication to Patient Under Court-Ordered Mental Health Services"). Specifically, Section 574.106 sets forth the conditions under which a court may order administration of psychoactive medication. *Id*. at § 574.106. That provision limits such judicial authorization to a defendant who is, at the time, under a court order to receive inpatient mental-health services or who is receiving those services while awaiting trial after being found incompetent to stand trial. *Id.*; *see also* TEX. CODE CRIM. PROC. arts. 46B.073 & 46B.086. This provision does not appear to be applicable to individuals sentenced to death and was not invoked as the basis for the involuntary medication in this case.

Because appellant was involuntarily medicated pursuant to the trial court's order under the competency-to-be-executed statute, we limit our holding to that circumstance and do not address the potential consequences of involuntary medication through a different procedure. We hold that the trial court exceeded its authority by ordering the involuntary

medication of appellant under the competency-to-be-executed statute, and, therefore, reverse that order. *See* TEX. CODE CRIM. PROC. art. 46.05. We sustain appellant's seventh claim.[21]

### B. Evidence Conclusively Establishes Appellant's Incompetence But For Involuntary Medication

As we explain in more detail below, we conclude that, but for his involuntary medication achieved through the trial court's unauthorized order, appellant is incompetent to be executed. We, therefore, agree with appellant's first and second grounds, in which he contends that the evidence does not support the trial court's finding that he is competent to be executed as defined by the competency-to-be-executed statute or the State or federal constitutions. *See* TEX. CODE CRIM. PROC. art. 46.05(h); *Green v. State*, 374 S.W.3d 434, 440 (Tex. Crim. App. 2012) (competency-to-be-executed statute codifies constitutional standards).

The trial court found, and the record shows, that the sole basis for the trial court's finding that appellant was competent was due to his involuntary medication.[22] Dr. Price explained that appellant is asymptomatic and competent so long as he is medicated. As noted by the State, Dr. Price testified that he did not regard "medically aided competence" and

---

[21] We further note that, although it cited appellant's best medical interests in support of forcible medication, the trial court's order was not authorized by statute. As discussed above, if involuntary medication is in a prisoner's best medical interest, prison regulations permit it under certain circumstances.

[22] In its order, the trial court found that, "[b]ecause without medication the prisoner is likely to remain incompetent, the medication is not only the least intrusive method, but apparently the only method that would further the state's interest."

"everyday competence" as distinguishable because the "cause of the competence is not a part of . . . an [expert's] opinion that someone is competent or not." Dr. Compton submitted an affidavit in which she concluded that appellant "appears to be currently competent. However, there is a reasonable degree of psychological certainty that without forced medications he would not be competent." Her affidavit noted several instances in which appellant refused medication and had to be forcibly medicated. After hearing the evidence, the trial court noted that "both doctors have stated that if he is taken off this medication, he could deteriorate and decompensate. But based upon the fact that he had been on this medication, that he is competent at this time."

In light of the record, we conclude that, but for the trial court's impermissible involuntary-medication order, the evidence does not support the trial court's determination that appellant is competent to be executed under the competency-to-be-executed statute. The State and the dissenting opinion by Presiding Judge Keller, however, suggest that the underlying reasons for an inmate's competency are immaterial to the sole question of whether he is competent under the competency-to-be-executed statute. This argument is unpersuasive because it mistakenly suggests that this court should apply the standard for traditional sufficiency-of-the-evidence review rather than the more analogous standard that this Court has applied when an unconstitutional act by the trial court has transformed the evidence in

the case.[23] Here, the latter standard applies because the trial court's unauthorized order was the sole cause of the transformation of the evidence from evidence supporting a finding of incompetence into evidence supporting a finding of competence.

The evidence conclusively shows that medication was critical to restoring appellant's competency and that, but for the involuntary-medication order, appellant would not have been compliant in taking his medication as prescribed. We, therefore, vacate the trial court's involuntary-medication order and its order finding appellant competent to be executed and remand the case to the trial court for periodic reevaluation of appellant under Article 46.05(m). TEX. CODE CRIM. PROC. art. 46.05(m).

---

[23]    The procedural posture of this case makes a traditional review for sufficiency of the evidence inapplicable. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (holding that appellate court reviewing conviction must find that rational trier of fact could have found essential elements of offense beyond a reasonable doubt). It is true, as Presiding Judge Keller points out, that in traditional sufficiency review, we review all the record evidence regardless of whether that evidence was properly admitted. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). But here we are not faced with mere questions of properly or improperly admitted evidence. Rather, we are confronted with a situation in which the trial court, through an unauthorized order, has altogether altered the state of the evidence. By ordering appellant medicated, the trial court caused to come into existence the sole evidence of appellant's competency. But for the unauthorized order, such evidence would not exist. The resulting competency determination must be reviewed in light of the invalid basis upon which it rests.

Because the trial court exceeded its authority by ordering appellant medicated, the trial court's determination that appellant is competent can stand only if it is wholly independent of the unauthorized order. It is not. *See, e.g., Dansby v. State*, 398 S.W.3d 233, 242 (Tex. Crim. App. 2013) (holding that district court's revocation of community supervision on basis of discharge from sex offender treatment program must have been premised on grounds "wholly independent of" any constitutional violation). To uphold the competency determination in spite of our acknowledgment that the underlying medication order is invalid would represent a sanctioning of the trial court's unauthorized action, which was undertaken for the purpose of circumventing the constitutional prohibition on the execution of incompetent persons. This Court will not permit the execution of an incompetent inmate who has become competent solely through an unauthorized order.

## IV. Conclusion

We hold that the evidence conclusively shows that appellant's competency to be executed was achieved solely through the involuntary medication, which the trial court had no authority to order under the competency-to-be-executed statute. The finding that appellant is competent must be reversed for lack of any evidentiary support. We do not reach the question of whether the federal or Texas constitution would disallow the execution of a prisoner who has been involuntarily medicated pursuant to a proper order. We do not reach appellant's claims that challenge the constitutionality of achieving competency by way of forcible medication or his claim that he is functionally mentally retarded. With respect to his statutory appeal, we sustain appellant's first, second, and seventh claims and dismiss his third, fourth, fifth, sixth, eighth, and ninth claims. We vacate the trial court's order of involuntary medication and its order finding appellant competent to be executed. We remand the case to that court for proceedings consistent with this opinion.

Delivered: September 11, 2013

Publish