

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-95,880-01

### IN RE STATE OF TEXAS EX REL. KIM OGG, Relator

---

**ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS
AND PETITION FOR WRIT OF MANDAMUS
IN CAUSE NO. 0760321
IN THE 338TH CRIMINAL DISTRICT COURT
HARRIS COUNTY**

---

*Per curiam.*

## O P I N I O N

Before us are (1) the State's motion for leave to file a petition for a writ of

mandamus and (2) the accompanying petition, styled "Relator's Emergency Petition for a

Writ of Mandamus Requiring Judge Ramona Franklin to Withdraw the Court's Order

Recalling the Execution Order and Death Warrant of Arthur Lee Burton." Because this

case involves a death sentence, it was proper for the State to file the motion and petition

in this Court. *Cf. Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003).

Real-Party-in-Interest Arthur Lee Burton was convicted of capital murder and sentenced to death in June 1998. On direct appeal, this Court affirmed the judgment of guilt but reversed Burton's death sentence and remanded the case for a new punishment trial. *Burton v. State*, No. AP-73,204 (Tex. Crim. App. Mar. 7, 2001) (not designated for publication). In September 2002, following a second punishment trial, Burton was again sentenced to death. On direct appeal from this resentencing, this Court affirmed Burton's death sentence. *Burton v. State*, No. AP-73,204 (Tex. Crim. App. May 19, 2004) (not designated for publication). Mandate issued June 2004.

To date, Burton has filed two postconviction habeas applications under Texas Code of Criminal Procedure Article 11.071: one attacking his conviction and initial death sentence, the other attacking his second death sentence.[1] This Court ultimately denied relief on both applications. *See Ex parte Burton*, No. WR-64,360-02 (Tex. Crim. App. Apr. 22, 2009) (not designated for publication) (first application); *Ex parte Burton*, No. AP-75,790 (Tex. Crim. App. Apr. 1, 2009) (not designated for publication) (second application). As of the date of this opinion, Burton has not filed a third 11.071 application.

On May 1, 2024,[2] Respondent, Judge Ramona Franklin of the 338th District Court of Harris County, Texas, entered an order (Execution Order) scheduling Burton's

---

[1] Unless otherwise specified, all mentions of "Articles" and "Chapters" in this opinion refer to the Articles and Chapters of the Texas Code of Criminal Procedure.

[2] Unless otherwise specified, all subsequent dates in this opinion refer to the year 2024.

execution for August 7. The record before us suggests that, on the same day Respondent entered the Execution Order, the clerk of the convicting court signed and stamped with the court's seal multiple documents styled "DEATH WARRANT." As relevant here:

- Burton's counsel received one of these signed, stamped documents in person and in court on May 1 (Death Warrant "A");

- Burton's counsel received another of these signed, stamped documents through the mail on May 2 (Death Warrant "B"); and

- On May 31, there came to be filed in the convicting court another signed, stamped document, missing at least one page but including a filled-out "RETURN" section, attesting that the Harris County Sheriff had delivered "this warrant" to "the Director of the Texas Department of Criminal Justice – Correctional Institutions Division on the 29th of May, 2024" (Death Warrant "C").

Death Warrants "A," "B," and "C" do not appear to be photocopies of one another. Indeed, the State concedes that "each document was individually signed and certified, rather than one original signed and copied."

On July 19, Burton filed in Respondent's court a "Motion to Recall Death Warrant for Noncompliance with Mandatory Statutory Requirements of Tex. Code Crim. Pro. Arts. 43.15 and 43.16." Burton argued that the irregularities between Death Warrants "A," "B," and "C" showed that, at some point, someone (perhaps the convicting court clerk, perhaps the Sheriff of Harris County, perhaps both) failed to comply with Articles 43.15 and/or 43.16. He therefore urged Respondent to "issue an order recalling the

operative death warrant."

Following a contested hearing on Burton's motion, and over the State's objection, Respondent granted Burton's motion via an order dated July 26 (Recall Order). The Recall Order states, "The Execution Order and Death Warrant are hereby recalled and shall be modified to reflect a new execution date." The Order also directs the State to "propose a new execution date in compliance with Tex. Code Crim. Pro. Article 43.141."

Relator Kim Ogg, the District Attorney of Harris County, promptly brought this mandamus action challenging the Recall Order. She offers three arguments in support of mandamus relief. First, Relator argues that Article 43.141 contemplates only two circumstances under which a convicting court can withdraw or modify an execution date once it has been set, neither of which is present in this case. *See* Art. 43.141(b-2), (d). Second, Relator contends that even if Articles 43.15 and 43.16 were violated in this case, Respondent was not at liberty to remedy those violations, because Articles 43.15 and 43.16 do not (as Article 43.141 does) expressly authorize a convicting court to remedy instances of noncompliance. Third, Relator posits that there was no Article 43.15 or 43.16 violation in this case—so that even if convicting courts are *sometimes* authorized to remedy Article 43.15 and Article 43.16 violations, Respondent's remedial action *in this case* was unauthorized.

After receiving and reviewing Burton's "Response to Relator's Motion for Leave to File Petition for Writ of Mandamus and Petition for Writ of Mandamus," and "Motion for Stay of Execution," we invited Respondent to explain her rationale as to why, and by what jurisdiction and authority, she issued the Recall Order. *In re State ex rel. Ogg*, No.

WR-95,880-01, at 4–5 (Tex. Crim. App. Jul. 29, 2024) (not designated for publication). Respondent promptly and respectfully informed this Court that she would stand on the explanation and rationale she gave at the hearing on Burton's motion.

Leave to file is granted. To obtain mandamus relief from this Court, Relator has to establish two things. First, she must show that she has no adequate remedy at law to redress her alleged harm. *In re State ex rel. Young*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007). Second, she must show that the act she seeks to compel is "ministerial." *Id.* This second requirement is satisfied if the relator can show she has a clear right to the relief sought—that is, when the facts and circumstances dictate but one rational decision under unequivocal, well-settled, and clearly controlling legal principles. *See id.* Here, Burton does not dispute that Relator has no adequate remedy at law from the Recall Order. This case will therefore turn on the second, ministerial-act prong.

It is well settled that a trial court must derive its jurisdiction from either the Texas Constitution or legislative enactments. *See, e.g.*, *Staley v. State*, 420 S.W.3d 785, 795 (Tex. Crim. App. 2013). When a conviction has been affirmed on appeal and mandate has issued, general jurisdiction is not restored in the trial court. *Id.* A trial court can obtain postconviction jurisdiction over a matter statutorily—for example, to set an execution date, conduct DNA testing, or determine whether an inmate is competent to be executed. *Id.* But the statutes bestowing jurisdiction over these matters also define the scope of that jurisdiction. *Id.* And even when a trial court has jurisdiction over a matter, it may lack authority to take a certain action. *Id.*

As relevant here, Article 43.141 endows a convicting court with limited jurisdiction to "reset[] . . . the execution date" or otherwise "modify or withdraw the order of the court setting a date for execution in a death penalty case." *See* Art. 43.141(b-2), (d). But as mentioned, the statute bestowing that jurisdiction also defines its scope. *Staley*, 420 S.W.3d at 795. And as Relator correctly observes, Article 43.141 sets out only two circumstances under which the convicting court may exercise that jurisdiction. First, when the appropriate parties have not been timely provided a copy of the order setting the execution date, "the exclusive remedy . . . is the resetting of the execution date." *See* Art. 43.141(b-1), (d). Second, if the convicting court determines that additional proceedings are necessary on an application for a writ of habeas corpus filed under Article 11.071 or a motion for forensic testing of DNA evidence submitted under Chapter 64, "[t]he convicting court may modify or withdraw the order of the court setting a date for execution." Art. 43.141(d).

For Respondent to exercise the limited jurisdiction bestowed by Article 43.141, she needed a pleading before her properly invoking it. *See In re State ex rel. Hicks*, No. WR-95,092-01, at 6–7 (Tex. Crim. App. Sept. 18, 2023) (not designated for publication) (reasoning that the convicting court lacked jurisdiction because it had no "pleading before [it] invoking a legitimate source of district-court jurisdiction"). Here, Burton presented Respondent with a "Motion to Recall Death Warrant" expressly invoking Articles 43.15 and 43.16. And while the Motion alleged several instances of noncompliance with those statutes, at no point did it allege facts that would trigger Article 43.141's limited grant of district-court jurisdiction to reset, withdraw, or modify an already-set execution date.

Burton argues that Articles 43.15 and 43.16 are themselves legitimate sources of district-court jurisdiction. But those articles do not expressly provide for remedies in cases of noncompliance, as Article 43.141 does. *Compare* Arts. 43.15, 43.16, *with* Art. 43.141(b-2). What this shows is that when the Legislature wishes to give convicting courts limited jurisdiction to oversee certain processes pertaining to executions, it knows how to do so. *See* Art. 43.141(b-1), (d). Here, the plain import of Articles 43.15 and 43.16, when read in concert with Article 43.141, is that the Legislature has declined to give convicting courts jurisdiction to remedy instances of noncompliance with Articles 43.15 and 43.16. So even if Burton's "Motion to Recall" substantiated one or more violations of Articles 43.15 and 43.16—and we express no opinion on that question here—the Motion nevertheless failed to invoke a legitimate source of district-court jurisdiction.

By issuing an order when she had neither general jurisdiction nor a pleading before her invoking a legitimate source of special or limited jurisdiction, Respondent violated a ministerial duty. *See In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015) ("If a trial judge lacks authority or jurisdiction to take particular action, the judge has a ministerial duty to refrain from taking that action, to reject or overrule requests that he take such action, and to undo the action if he has already taken it.") (internal quotation marks omitted); *see also State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002) (plurality op.) ("Without jurisdiction, the trial court has no power to act."). She therefore has a ministerial duty to "undo" that violation. *See Medina*, 475 S.W.3d at 298.

Relator has shown that she is entitled to mandamus relief. Relief is granted. Respondent shall immediately rescind her order of July 26 purporting to recall the execution order and death warrant. In light of this holding, Burton's Motion for Stay of Execution is denied. No motions for rehearing will be entertained. The Clerk of this Court is instructed to issue mandate immediately.

Delivered: July 30, 2024
Publish