

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. WR-84,212-01

### IN RE STATE OF TEXAS EX. REL. BRIAN RISINGER, Relator

### ORDER TO APPEAR AND SHOW CAUSE FOR UNTIMELY FILED DOCUMENT IN RAPHAEL DEON HOLIDAY'S CASES FROM CAUSE NOS. 10,423, 10,425, and 10,427 IN THE 278TH JUDICIAL DISTRICT COURT MADISON COUNTY

**NEWELL, J., filed a concurring statement.**

I join the Court's order for counsel Frank Blazek and William F. Carter to appear before this Court to explain why they filed an untimely motion to withdraw the warrant of execution for their client Raphael Deon Holiday. As the other judge who dissented to this Court's denial of mandamus relief regarding Holiday's motion to withdraw his warrant of execution, I now feel it incumbent upon me to write separately to explain why I voted against mandamus relief and why I agree with the Court's order to show cause.

**Counsel Filed a Motion to Withdraw the Order of Execution
Not a Subsequent Writ**

The Court's show cause order sets out in detail the timeline of events leading up to the day of Raphael Holiday's execution.  It is worth repeating that even though Holiday had four different attorneys purporting to act on Holiday's behalf (as well as a fifth one attempting to intervene to provide assistance), none of these attorneys filed a subsequent application for a writ of habeas corpus pursuant to Article 11.071, Section 5 of the Code of Criminal Procedure prior to their client's execution.  As early as August 14, 2015, these attorneys were aware of not only the pending execution date, but also their client's repeated attempts to secure legal help to advance his case in various venues.

The only motion filed in state court was a motion to withdraw the warrant of execution pursuant to Article 43.141(d)(1).  TEX. CODE CRIM. PROC. ANN. art. 43.141(d)(1) (West 2013).  There is simply no other way to characterize the motion at issue in this case.  Under its own terms, the motion to withdraw acknowledged that a subsequent application for a writ of habeas corpus had yet to be filed.  It requested the warrant be withdrawn in order to afford Holiday an opportunity to file one, perhaps with the assistance of Blazek and Carter, or perhaps with help by another, as-yet-unknown attorney.  As further justification for the motion to withdraw the warrant, the attorneys listed two possible claims they sought to raise in a to-be-filed application for a subsequent writ of habeas corpus: the use of unreliable expert testimony as to future dangerousness in Holiday's trial, and a complaint that one of

his three capital murder convictions was barred by double jeopardy.[1]

The legal basis for the motion was primarily statutory. The attorneys relied explicitly upon their interpretation that Article 43.141 allowed a trial court to withdraw an order of execution even where no subsequent writ of habeas corpus had been filed or was pending before the trial court. They provided examples of district courts that had signed orders withdrawing or modifying warrants of execution to grant more time to file a subsequent application for writ of habeas corpus. They also included an equitable argument that the warrant of execution should be withdrawn so that Holiday could continue litigating his requests for representation in federal court as well as have state habeas counsel appointed to assist with a subsequent writ. The order itself ordered the execution date to be withdrawn "to permit those proceedings to be filed and adjudicated."

It is true that we look to the substance of pleadings in extraordinary matters to determine their character. *In re Daniel*, 396 S.W.3d 545, 549 (Tex. Crim. App. 2013). However, even the substance of the pleadings from the body of the motion to the proposed order reveals this was exactly what it claimed to be–a motion to withdraw or modify the execution date. It was not intended as a subsequent application for a writ of habeas corpus. If it were, there would be no reason for the litigants to argue that they needed more time in

---

[1]Attorney Blazek represented Holiday on direct appeal, raising forty-nine points of error related to eighteen different aspects of the trial. *Holiday v. State*, AP-74,446, AP-74,447, AP-74448 (Tex. Crim. App. Feb. 8, 2006) (not designated for publication). He did not raise a challenge based upon double jeopardy even though such a claim was clearly available prior to trial and on direct appeal. He did challenge the admissibility of unreliable expert testimony on direct appeal, but this Court has already rejected that argument with only one judge dissenting on that basis. *Holiday v. State*, AP-74,446, AP-74,447, AP-74,448, 2006 WL 288661 at *1 (Tex. Crim. App. Feb. 8, 2006) (Womack, J., dissenting) (not designated for publication)

order to file a subsequent application for writ of habeas corpus. Suggesting that the trial court could have reasonably regarded this unverified motion as a subsequent application for a writ of habeas corpus blinks reality.

**The Motion to Withdraw was not A Motion in Arrest of Judgment**

If construing the motion in this case as a subsequent writ blinks reality, suggesting it should be treated like a motion in arrest of judgment alters reality entirely. A motion in arrest of judgment is a defendant's oral or written suggestion that, for reasons stated in the motion, the judgment rendered against the defendant was contrary to law. TEX. R. APP. P. 22.1. The rules of appellate procedure provide that a motion in arrest of judgment can be granted on any of the following grounds: (a) that the indictment or information is subject to an exception on substantive grounds; (b) that in relation to the indictment or information a verdict is substantively defective; or (c) that the judgment is invalid for some other reason. TEX. R. APP. P. 22.2. It is, in effect, a post-trial motion to quash the indictment limited to any complaints about the indictment made by timely objection prior to trial. *See e.g. Crittendon v. State*, 923 S.W.2d 632, 634 (Tex. App.–Houston [1ˢᵗ Dist.] 1995, no pet.).[2]

Additionally, a motion in arrest of judgment must be filed no later than 30 days after the date when the trial court imposes or suspends sentence in open court. TEX. R. APP. P.

---

[2] Subsection (c) does not expand the scope of the grounds for a motion in arrest of judgment beyond those set out in former Article 41.03 of the Texas Code of Criminal Procedure because the legislative grant of rulemaking authority to this Court does not allow any rules that abridge, enlarge, or modify substantive rights of a litigant. TEX. GOV'T. CODE ANN. § 22.018(a) (West 2013); *Flowers v. State*, 935 S.W.2d 131, 132-34 (Tex. Crim. App. 1996). Former Article 41.03 limited the grounds for a motion in arrest of judgment to exceptions to the indictment or information. *Crittendon*, 923 S.W.2d at 634 n. 1.

22.3. Like a motion for new trial, the trial court has seventy-five days to rule upon the motion, and it is deemed denied if the trial court does not rule upon the motion within that time period. TEX. R. APP. P. 22.4. Tellingly, the effect of a trial court's grant of a motion in arrest of judgment is to restore the defendant to the position he or she was in before the indictment or information was presented. TEX. R. APP. P. 22.6.

The motion at issue in this case did not ask to place Holiday in the position he was before the indictment was presented. It was not based upon arguments he had raised prior to trial. And it was presented at least a decade after sentence was imposed in open court. Arguing that this was an arrest of judgment that the State could have appealed has no basis in law or fact. I can only assume that is why Holiday's attorneys did not make that argument in their response to the State's petition for mandamus relief.

## Article 43.141(d)(1) Explicitly Requires a Pending Writ Application

After the trial court granted the motion, the State sought mandamus relief with this Court. In the reply to the State's petition, Holiday averred through his counsel that "The motion was predicated on the existence of at least two constitutional claims that Holiday seeks to raise in a subsequent habeas corpus application, both of which may meet the requirements of Texas Code of Criminal Procedure Article 11.071 § 5." Thus, unlike many "last-minute" death-penalty filings, in this case, the Court was faced with a relatively discrete issue of law: Does Article 43.141 allow a trial court to withdraw a warrant for execution when no application for a writ of habeas corpus is pending? A plain reading of the statute

reveals that it does not.

Article 43.15 of the Code of Criminal Procedure explicitly authorizes a trial court to enter an order setting a date for an execution. TEX. CODE CRIM. PROC. ANN. art. 43.15 (West 2013). Article 43.141 addresses scheduling of the execution date, and the trial court's authority to withdraw or modify the order of execution. TEX. CODE CRIM. PROC. ANN. art. 43.141. Article 43.141(d) reads as follows:

> (d)  The convicting court may modify or withdraw the order of the court setting a date for execution in a death penalty case if the court determines that additional proceedings are necessary on:
>
> > (1)  a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071; or
> >
> > (2)  a motion for forensic testing of DNA evidence submitted under Chapter 64.

*Id.* Notably, subsection (d) authorizes the trial court to modify or withdraw an order setting a date for execution if additional proceedings are necessary. TEX. CODE CRIM. PROC. ANN. art. 43.141 (d) (West 2013). However, that subsection presupposes that the underlying document that requires additional proceedings has already been filed or submitted. *Id.* This limitation of the trial court's authority may appear to be harsh in its application, particularly in the context of this case, but the language could not be more clear.[3]

---

[3] It is worth noting that this statutory provision was passed in 1995 as part of a larger effort to streamline review of death penalty cases. Included as one of many rationales for passage of the statute was the need to decrease the delay between a capital murder conviction and the imposition of a death sentence. House Comm. on Criminal Jurisprudence, Bill Analysis, C.S.S.B 440, 74th Leg., R.S. (April 27, 1995) ("1995 Bill Analysis") (available at: http://www.legis.state.tx.us/tlodocs/74R/analysis/html/SB00440H.htm). And allowing the trial court authority to withdraw a valid execution order without a showing of active pleadings would necessarily allow a trial court to delay

This Court has not published any opinions addressing whether a trial court can nevertheless withdraw or modify an order for execution despite the language of the statute, but we have weighed in on the issue twice.[4] In *In re Roach*, the trial court withdrew an order setting the execution of Charles Dean Hood even though there were no active pleadings before it. No. WR-4116-08, 2008 WL 2486229 at *1 (Tex. Crim. App. June 17, 2008) (not designated for publication). The trial court then recused itself, thereby transferring authority to the regional presiding judge. *Id.* The State subsequently filed an application for a writ of mandamus to order the regional presiding judge to rescind the order withdrawing the death warrant. *Id.* We granted mandamus relief explaining that the trial court lacked authority to withdraw the order setting the execution date because the plain text of the statute required a pending or active pleading to justify the modification or withdrawal. *Id.* at *2.

Similarly, *Ex parte Cannady*, this Court considered a third subsequent application for a writ of habeas corpus in the capital murder case of Rogelio Cannady. No. WR-25462-07, 2010 WL 2006763 at *1 (Tex. Crim. App. May 17, 2010) (not designated for publication). This Court first determined that Cannady's third subsequent application for writ of habeas corpus failed to satisfy the dictates of Article 11.071, § 5, and we therefore dismissed the application and denied his motion to stay his execution. *Id.* We went on to address the fact

---

an execution indefinitely. While the legislative history is not necessary to clarify any ambiguity in the statute, it does reinforce the observation that the limitation of a trial court's ability to withdraw an execution unless one of two types of filings are pending is due to a legislative design to decrease delay in post-conviction proceedings.

[4] I acknowledge that these cases are unpublished and lacking in precedential value. TEX. R. APP. P. 47.7. I discuss them because they were cited by the parties in the underlying case. Even if they had precedential value, they do not support the trial court's order in this case.

that Cannady had filed a motion to withdraw the order of execution prior to filing his third subsequent habeas application.  *Id.*  We observed:

> This motion was authorized under Texas Code of Criminal Procedure article 43.141, and may be ruled upon by the trial court under the dictates of that statute.  However, in denying the motion, the trial court declared that it was treating the motion as a subsequent application, and it opined that it was not authorized to modify or withdraw its previous order until this Court determined whether the requirements of Article 11.071, § 5, had been met.
> Applicant's motion standing alone is not, and will not be construed by this Court to be, a subsequent writ application subject to Article 11.071 review.

*Id.*  The trial court apparently denied the motion–as it was required to–under Article 43.141 because no subsequent writ application was pending.  *Id.*  This Court's observation in *Cannady*–that the trial court's stated reason for denying the motion was incorrect because a motion under Article 43.141 is not a subsequent application for a writ of habeas corpus and should not be construed as such–did nothing to suggest that a trial court can withdraw an order of execution when no subsequent habeas application is pending.  A defendant is authorized to file a motion to withdraw under Article 43.141, but a trial court must deny it (under the dictates of the statute) if there are no active pleadings.  Even assuming precedential status for these two cases, I see no inconsistency between our holdings in *Roach* and *Cannady* or between our holdings in those cases and the express terms of the statute.

Additionally, Holiday's attorneys cited (and provided) several trial court orders withdrawing an execution date as proof that a trial court has the authority to do so even when no application for a writ of habeas corpus is pending.  However, these orders were not

brought before this Court on a petition for writ of mandamus, and indeed, at least one was entered by agreement of the parties. Consequently, these orders do not support the proposition that the trial court could properly construe Article 43.141(d)(1) to authorize withdrawal of an execution order when there is no pending application for a writ of habeas corpus on file.

**The State's Petition for Writ of Mandamus Was Not Procedurally Barred**

It is true that the current rules of appellate procedure do not specifically require that this Court request a response from the trial court before granting relief on a petition for a writ of mandamus. But it is not at all clear that the rules of appellate procedure governing the Texas Supreme Court and the courts of appeals do so either. Rule 52.2 designates three different parties to an original proceeding. TEX. R. APP. P. 52.2. The party seeking relief is the relator, the State in this case, while the person against whom relief is sought is the respondent, in this case the trial court. *Id.* Rule 52.2 also designates the person whose interest would be directly affected by the relief sought as a real party in interest and a party to the case. *Id.* In this matter, Raphael Holiday was the real party in interest and, by virtue of his interest in his own case, a party.

Rule 52.4 of the Rules of Appellate Procedure governs responses in original proceedings in the Texas Supreme Court and the court of appeals. The rule allows that "any party may file a response to the petition, but it is not mandatory." TEX. R. APP. P. 52.4. The rule also states "The court must not grant relief–other than temporary relief–before a

response has been filed or requested by the court." *Id.*

On its face, Rule 52.4 does not require a response, or a request for a response, from *all* parties before the court can grant relief. *Id.* As long as a response has been filed from the most interested party, a court may grant relief. *Id. See e.g. In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 140 (Tex. 2004) (granting mandamus relief where respondent was trial court, but the real party in interest filed response to petition for mandamus rather than the respondent); *In re Living Centers of Texas, Inc.*, 175 S.W.3d 253 (Tex. 2005) (same). Courts of appeals routinely request a response from the real party in interest and proceed with only that response rather than insisting upon an response from the trial court because, understandably, the real party in interest has far more interest and investment in the case. *See e.g. In re Victor Enterprises, Inc.*, 308 S.W.3d 455, 457 (Tex. App.–Dallas 2010, original proceedings); *In re Living Centers of Texas, Inc.*, 228 S.W.3d 678 (Tex. App.–Corpus Christi 2004, original proceedings), *mand. granted*, 175 S.W.3d 253 (Tex. 2005); *In re Patricia Gist*, 974 S.W.2d 843 (Tex. App.–San Antonio 1998, original proceedings). If granting mandamus relief without requesting a response from the trial court–as opposed to the interested parties–violates a civil litigant's right to due process, the Texas Supreme Court has yet to say so.

This need for a response from the trial court is a red herring because the real party in interest filed a response in this case. Holiday did not argue that the State's petition for writ of mandamus should be rejected on procedural grounds based upon the lack of a request for

a response from the trial court or that the failure to do so violated due process. And this Court did not grant the State's petition without receiving Holiday's response and considering it. I acknowledge that time for consideration was necessarily condensed, but that was a direct result of the timing of the motion to withdraw itself. I could not find any cases from the Texas Supreme Court interpreting the scope of Rule 52.4 as requiring a request for a response from the trial court even after the real party in interest has responded.[5]

Admittedly, the Rules of Appellate Procedure could be clarified to further explain the scope of Rule 52.4 as well as make it explicitly applicable to original proceedings in this Court. However, I do not think that the Rules Advisory Committees for either this Court or the Texas Supreme Court should be faulted for an oversight that would have had no impact on this case.[6] Focusing upon the alleged shortcomings of the Rules of Appellate Procedure needlessly distracts from the real candidate for correction, Article 43.141. Amending Article 43.141 to expand the trial court's authority or grant the State a right to appeal such a withdrawal order would do more to avoid the circumstances presented here than requiring a request for a response from the trial court even after receiving a response from the real party in interest.

---

[5] The Dallas Court of Appeals has held Rule 52.4 prohibited granting mandamus relief where the relator was not afforded an opportunity to respond. *In re Victor Enterprises*, *Inc.*, 304 S.W.3d 669 (Tex. App.–Dallas 2010, no writ). While the court of appeals opined that failing to afford the relator an opportunity to respond violated due process, the sole support for that holding was the rule itself. *Id.* More importantly, the opinion was not concerned with a claim that due process requires a request for a response from the trial court even where the interested parties have responded.

[6] As head of the Court of Criminal Appeals Rules Advisory Committee, Judge Alcala is well-positioned to suggest these changes going forward.

**Mandamus Relief Would Have Been Warranted**
**On a Pure Article 43.141(d)(1) Withdrawal Order**

On the merits of the State's petition for writ of mandamus, I agree with the Court that the trial court was not allowed to withdraw the order of execution under the terms of Article 43.141(d)(1). In order to be entitled to relief, the State was required to show: 1) that it had no adequate remedy at law, and 2) that it sought to compel a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 121-22 (Tex. Crim. App. 2013). This ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *In re Bonilla*, 424 S.W.3d 528, 533 (Tex. Crim. App. 2014). A clear right to relief is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles. *Weeks*, 391 S.W.3d at 122.

Additionally, with respect to the "no adequate remedy at law" requirement, we have explained that a remedy at law, though it technically exists, may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005). Article 43.141 provides no avenue for appeal for the State to review the trial court's order withdrawing an order of execution. *State v. ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011) (holding that the State had no adequate remedy at law to prevent hearing on constitutionality of the death penalty prior to trial where the State lacked the ability to appeal a trial court's order preventing it from pursuing a

capital-murder conviction and a sentence of death). I do not see any other adequate remedy at law for the State to seek review of the trial court's order that is not "too uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective to be deemed inadequate." *Greenwell*, 159 S.W.3d at 648-49. Acquiescing to the new execution date or trying to shoehorn the issue into review of the as-yet-unfiled subsequent writ application would still not provide review of the underlying issue, the propriety of the order to withdraw. *See In re McCann*, 422 S.W.3d 701, 710-11 (Tex. Crim. App. 2013) (noting that relator had no adequate remedy at law even though he could seek relief from his order for contempt through a writ of habeas corpus because it would not resolve the underlying issue in the case); *see also Ex parte Henderson*, 246 S.W.3d 690, 692 (Tex. Crim. App. 2007) (addressing application for subsequent writ of habeas corpus without addressing propriety of trial court's order withdrawing execution date). Holiday's counsel did not argue that the State had an adequate remedy at law because the State simply did not.

The terms of Article 43.141 are clear; a trial court cannot withdraw an order setting the execution for additional proceedings unless a subsequent or an untimely application writ of habeas corpus has already been filed. TEX. CODE CRIM. PROC. ANN. art. 43.141 (West 2013). In *Weeks*, we acknowledged that statutory provisions could be the basis for a showing of a clear right of relief. *Weeks*, 391 S.W.3d at 124-26. The Court was reasonable in determining that the statutory provision in this case was clear, and that our own prior actions (even though they were unpublished opinions) did not contradict the text of Article

43.141(d)(1).  I cannot fault the majority of this Court for granting the State's petition for mandamus relief on this basis.

## Mandamus was Inappropriate Because the Trial Court Retained Inherent Authority to Withdraw or Modify its Orders

But the attorneys in this case also based their motion to withdraw on a claim that Holiday's federal writ counsel had effectively abandoned him.  To me, that is the heart of the matter.  As both this Court's show cause order and the dissenting statement detail, Holiday had repeatedly requested assistance from Seth Kretzer and James Volberding, Holiday's federally-appointed writ counsel.  After having exhausted his direct appeal and his first application for a writ of habeas corpus in this State and litigated his federal writ of habeas corpus through to the United States Supreme Court, Volberding informed Holiday that he would not be filing additional appeals or seeking clemency because neither presented a realistic chance of sparing Holiday's life.  *See* Brandi Grissom, *Condemned Mans' Lawyers Stop Helping, Citing "False Hope,"* DALLAS MORNING NEWS, Nov. 16, 2015 (available at http://www.dallasnews.com/news/state/headlines/20151116-condemned-mans-lawyer-stop-helping-cite-false-hope.ece).[7]  Attorneys Blazek and Carter were aware of these developments and filed the motion to withdraw the execution date pending the filing of a subsequent writ after an attorney with no connection to the case suggested filing a motion

---

[7] It is worth noting that the United States Supreme Court denied the request for a stay of execution despite this attorney-abandonment theory.  *Holiday v. Stephens*, 577 U.S. ___ at 1 (Nov. 18, 2015).  Even Justice Sotomayor, who wrote a concurring statement to opine that the trial court should have allowed the substitution of counsel, ultimately agreed with the Court to deny the stay because counsel had ultimately filed a clemency petition.  *Id.* at 3.

to withdraw the order of execution. While they were unclear as to whether they might be filing the subsequent writ application, they raised equitable concerns based upon federal writ counsel's failures as a basis for the trial court's order independent of Article 43.141.

In their response to the State's petition for writ of mandamus, they observed that Article 43.141 was not the only source of authority for the trial court to act. Relying upon the trial court's "plenary power" to alter its own orders, they argued that the trial court could modify or rescind its orders through authority independent of the statute. And they also cited to *Ex parte Henderson*, where a trial court had recalled the defendant's death warrant "in the interest of justice" so that the defendant could have sufficient time to gather additional material for a subsequent writ application. *Ex parte Henderson*, 246 S.W.3d 690, 692 n. 1 (Tex. Crim. App. 2007).[8] This argument properly focused on what I felt was the central concern of the case: whether a trial court could–in the interest of justice–withdraw a warrant of execution where the defendant represents that the defendant's counsel had effectively stopped representing him and he needs new counsel. Given that the issue is at least unsettled, I voted to deny mandamus relief.

Under the Texas Constitution, district courts are invested with inherent authority to execute their own judgments. *Kelly v. State*, 676 S.W.2d 104, 107 (Tex. Crim. App. 1984). In addition to express grants of power conferred by constitution, statute, or common law,

---

[8] In *Henderson* this Court evaluated the propriety of the subsequent writ application, not the propriety of the trial court's order, which was necessarily a moot issue at that point. 246 S.W.3d at 691. Even so, the trial court did not base its withdrawal order on Article 43.141(d)(1); it justified the withdrawal as being "in the interests of justice" suggesting reliance upon the trial court's inherent authority.

courts have inherent and implied powers that provide a much broader foundation upon which to act. *State v. Patrick*, 86 S.W.3d 592, 601 (Tex. Crim. App. 2002) (Cochran, J., dissenting); *See also* TEX. GOV'T. CODE ANN. § 21.001 (a) (setting out that a court has "all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including the authority to issue the writs and orders necessary or proper in aid of its jurisdiction"). In *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979), our sister court recognized this inherent authority of a trial court to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity. *See also State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991) (citing *Eichelberger*). As Judge Cochran observed in her dissenting opinion in *Patrick*, there are essentially two contradictory views of a trial court's authority: whatever is not forbidden is permitted, and whatever is not explicitly authorized is forbidden. *Patrick*, 86 S.W.3d at 601. Because I view the trial court's authority under the former principle, I would have held that the trial court properly relied upon its inherent authority by withdrawing its order setting an execution date in light of the equitable claims raised in Holiday's motion.

However, I fully acknowledge that taking this position is almost completely undermined by *Staley v. State*, 420 S.W.3d 785 (Tex. Crim. App. 2013). There, this Court was faced with the difficult question of whether federal or state law prohibited the involuntary medication of a mentally ill inmate for the purpose of carrying out an order of execution. *Id.* at 786. Rather than decide the issue on constitutional grounds, we held that

Article 46.05 of the Code of Criminal Procedure, which governs a defendant's competency to be executed, did not authorize the trial court to involuntarily medicate a mentally ill inmate. *Id.* at 796. In doing so, we rejected an argument that such action was justified under a trial court's inherent authority. *Id.* In effect, we took the position that the trial court could not act unless statute specifically authorized the trial court's actions even though it had jurisdiction to rule upon the issue of competency. *Id.* Returning to Judge Cochran's dissent in *Patrick*, the Court took the "whatever is not explicitly authorized is forbidden" view of inherent authority, and I disagree with that view. I would have reached the same result in *Staley,* but on different grounds.

Yet, the fact remains that *Staley* is binding authority that sharply limits a trial court's inherent authority to the terms of the statute governing the proceedings. Arguably, the scope of the rationale we announced in *Staley* may not extend to orders under Article 43.141, and the unsettled nature of the scope of the holding in *Staley* could justify a denial of the State's petition for mandamus relief in Holiday's case. *Simon v. Levario*, 306 S.W.3d 318, 322 (Tex. Crim. App. 2009). But I cannot fault a majority of the Court for reading *Staley* as a limitation of a trial court's authority in this case any more that I could fault Judge Alcala for authoring *Staley* in the first place.

## A Show Cause Hearing Guarantees More Information
## Not a Particular Outcome

This Court's Miscellaneous Rule 11-003 is important to the proper consideration of pleadings relating to an impending execution. *In re Dow*, 460 S.W.3d 151, 157 (Tex. Crim.

App. 2015) (Alcala, J., dissenting). The purpose of the rule is to ensure both that a defendant has an opportunity to raise any issues pertinent to the impending execution and that this Court has an adequate opportunity to consider those pleadings. *Id*. Violations of this rule could harm a defendant if a judge cannot adequately consider a defendant's pleadings, but it can also harm society through an unmeritorious stay of execution merely because of the compressed time a judge has to consider the pleadings. *Id.* The concerns are weighty, indeed.

The dissent advocates passionately that this Court did not have adequate time to consider the pleadings in this case. But the timing of Holiday's motion dictated the compressed time frame. The accompanying statement from the attorneys merely states that they decided to file the motion to withdraw the execution order the day before the execution date after being informed by another attorney that they could do so. Contrary to the dissent's factual assertions, nothing in Blazek's or Carter's statements establishes that these two attorneys "did not know Holiday needed counsel until the day before the scheduled execution." The only reference to the day before the scheduled execution appears in Blazek's statement, and it recites that Blazek was contacted by an attorney regarding the possibility of filing a motion to withdraw the order of execution. This information was preceded by acknowledgments that Kretzer had told Holiday in August that he did not think anything else could be done in Holiday's case, and that another attorney had considered representing Holiday on October 9, 2015. It may very well be that Blazek and Carter were

unaware that Holiday needed counsel, but that is not what the good cause certificate says. I am more than willing to commend Blazek and Carter for stepping into the breach when no one else would if that is the appropriate response after the hearing, but I have not pre-judged the issue and would rather hear what they have to say before I decide. And the hearing itself could provide valuable insight for handling future cases. That is why I join the Court's order to show cause.

With these thoughts, I concur.

Filed: December 16, 2015

Publish